ALLENBERG COTTON CO.,
INC., Appellant,

v.

Jayne Ann WOODS, Commissioner,
Department of Revenue, State of
Tennessee, Appellee.

Supreme Court of Tennessee.

Oct. 12, 1982.

Carl H. Langschmidt, Jr., Boone, Wellford, Clark, Langschmidt & Apperson, Memphis, for appellant.

Joe C. Peel, Asst. Atty. Gen., William M. Leech, Jr., Atty. Gen., Nashville, for appellee.

## OPINION

COOPER, Justice.

This action was brought by appellant to recover franchise and excise taxes assessed against it and paid under protest. Appellant filed franchise and excise tax returns for its fiscal years ending January 31, 1971, through January 31, 1974, and paid taxes on earnings and capital apportioned to Tennessee under the formulae set forth in Tenn. Code Anno. §§ 67–2708 and 67–2914, as then in force. On auditing the returns and records of appellant for the tax years in question, the Commissioner of Revenue made no issue of the fact that appellant did business "in Tennessee and elsewhere," no-

tably California [1], and consequently was entitled to apportion its earnings and capital. The commissioner did conclude, however, that appellant had failed to determine properly the ratios for apportionment of its earnings, and assessed appellant additional taxes of $68,206.22. The assessment was paid under protest and is the subject of this suit.

In computing the excise tax due Tennessee, Tenn.Code Anno. § 67–2708 provides that a corporation doing business in Tennessee and elsewhere shall apportion its net earnings to Tennessee (and thus pay Tennessee taxes) on the basis of the ratio obtained by taking the arithmetical average of three ratios:

(a) The ratio of the value of its real and personal property in Tennessee on the day of the close of the fiscal year, to the value of its real and personal property owned everywhere.

(b) The ratio of the total sales made through or by offices, agencies, public or private warehouses, or branches located in Tennessee to the total sales made through or by offices, agencies, public or private warehouses, or branches located everywhere.

(c) The ratio of the gross sales to customers within Tennessee to the total gross sales from all sources.

The apportionment formula for the franchise tax is based on the arithmetical average of the first and second ratios just stated. Tenn.Code Anno. § 67–2914, as then in force.

■ The disagreement between appellant and the Commissioner centers on ratios (a) and (b). In computing ratio (a), the Commissioner accepted appellant's figures, excepting only appellant's allocation of in-process inventory. The appellant allocated

none of the inventory to Tennessee since it was all destined to points outside Tennessee. As noted by the Commissioner, the destination of the in-process inventory is not the controlling factor. It is where the in-process inventory actually is located on the last day of the fiscal year. This could not be determined by state auditors from the records of appellant. The Commissioner then allocated the in-process inventory to Tennessee in the same ratio the amount of cotton stored in Tennessee by appellant at year's end in each of the tax years had to the total amount of cotton owned by appellant, wherever located, at year end for each of the tax years. Using this basis, the following percentages were determined for each of the tax years in question

| 1970 | 4.4196% |
| 1971 | 3.2667% |
| 1972 | 4.2273% |
| 1973 | 5.2238% |

The in-process inventories allocated by the Commissioner to Tennessee under these percentages were as follows:

| Tax year | Total in-process inventory | Amount allocated to Tennessee |
|---|---|---|
| 1970 | $ 6,739,537.47 | $ 297,860.60 |
| 1971 | 15,090,132.64 | 492,949.36 |
| 1972 | 13,115,422.00 | 554,428.00 |
| 1973 | 53,609,122.89 | 2,800,433.36 |

■ The burden is on the appellant to disprove the allocation and the assessment by the Commissioner. *Edmondson Management Service, Inc. v. Woods,* 603 S.W.2d 716 (Tenn.1980). The chancellor concluded that the appellant failed to carry this burden, and we agree. Absent direct evidence showing the actual location of the in-process inventory on the last day of the fiscal year, we see no error in the allocation of the inventory by the Commissioner nor in his basing the tax assessment on such allocation.

1. Franchise tax was paid to the State of California for fiscal years ending January 31, 1971, through January 31, 1974. Sales reported as having been made "by or through" the Fresno, California office, and accepted by state auditors are:

Fiscal year ending 1/31/71
$ 683,001.00

Fiscal year ending 1/31/72
$1,248,072.00

Fiscal year ending 1/31/73
$2,249,067.00

Fiscal year ending 1/31/74
$7,403,249.00

No taxes or earnings were paid by appellant to either the State of Georgia or the State of South Carolina.

The disagreement with respect to ratio (b)—the sales factor of the apportionment formulae—is over the allocation of sales negotiated by appellant's sales offices in LaGrange, Georgia, and Spartanburg, South Carolina. Appellant contends that these sales were made by branch offices outside of Tennessee and are not to be included in the determination of the sales ratio. The Commissioner insists that the sales are made "through" the Memphis office of appellant and must be included in the determination of the sales ratio in the apportionment formulae.

Allenberg Cotton Company, Inc. is a cotton merchant with its principal office in Memphis, Tennessee. Cotton is sold by appellant through salesmen located in South Carolina and Georgia and through commissioned agents located in Alabama, Georgia, the Carolinas, and in the northeastern states. Some sales orders are taken directly by the Memphis office.

Frank Jackson, a vice-president of Allenberg, lives in LaGrange, Georgia, and oversees the sales operations of the LaGrange and Spartanburg offices which are the subject of the dispute in this case. Normally, each of these sales offices has two salesmen. Occasionally, apprentice salesmen also work out of the LaGrange office.

The profit margin of a cotton merchant is of necessity small. The commodity market for cotton changes often and rapidly. Consequently, appellant, through its Memphis office, keeps a tight rein on its employees and agents, who purchase and sell cotton in its behalf. Salesmen in the LaGrange and Spartanburg offices have more leeway in negotiating sales than do commission agents, but their activities are strictly circumscribed. Each salesman is required to contact the Memphis office daily and to secure narrow price parameters within which he can negotiate a sale of cotton. Most of the negotiated sales call for future delivery. But whether for current or future delivery, once the salesman has negotiated a contract for the sale of raw cotton, he telephones the Memphis office immediately and gives information concerning the sale, which is entered on a sales card and is assigned a sale number in the company's journal. The Memphis office then prepares a Confirmation of Sale document, which is mailed to the mill for acceptance and return to Allenberg Cotton Company in Memphis. See Tenn.Code Anno. §§ 47–2–201(1) and 47–2–105(2). The sales information also is entered in Memphis on the company's Commitment Sheet to keep the purchasing and shipping personnel apprised of cotton sold, the delivery dates, and the need, if any to purchase additional cotton or cotton futures. The Sales Card goes to the shipping clerk and the classing clerk so that they can locate, select, and ship cotton which meets the grade and growth of cotton called for by the contract of sale.

Once the cotton has been classified and grouped, it is shipped to the mills in accord with the delivery schedule called for in the contract. The invoicing and shipping documents which designate each bale of cotton are prepared by the Memphis office. The cotton to fill these orders either is, or has been purchased by financing arranged by the Memphis office. To obtain the release of the warehouse receipts for the cotton to be shipped, the Memphis office also prepares and forwards the necessary documents to the bank and then to the carrier who picks up the cotton at the warehouse. Invoice documents also are mailed from Memphis to the mill so that the customer will have them to check-in the cotton when it arrives. Each invoice contains a request for payment to the banks servicing the Memphis office of Allenberg, with payment to be made on receipt by the mill of the cotton and title documents.

■ On analyzing the business operations of appellant, we agree with the chancellor that the "Memphis office by reporting prices, arranging financing, and confirming sales exerted such a degree of control over the sales transactions as to warrant the conclusion that the sales were made through the Memphis office." The Memphis office is the nerve center of Allenberg Cotton Company. Salesmen are required to keep in daily contact with the Memphis

office, which sets price parameters. Once a sale of cotton for future delivery is negotiated by a salesman, wheresoever he may be located, the Memphis office confirms the sale, obtains the cotton, classes it and determines which cotton is to go to the mills. The Memphis office also finances the purchase of the cotton, prepares the title documents and subsequently ships the cotton and title documents to the mills. Payment for the cotton goes to banks servicing the Memphis office of appellant. In short, the Memphis office does everything connected with the sale except call on the customer and take the order.

Decree affirmed. Costs incident to the appeal are adjudged against appellant, Allenberg Cotton Company.

HARBISON, C.J., BROCK and DROWOTA, JJ., and ALLISON HUMPHREYS, Special Justice, concur.